# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **KATHY COOK**, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) CASE NO. 5:20-cv-445 ) ) JUDGE ) |
| v. | ) MAGISTRATE JUDGE ) |
| **BREWSTER CHEESE COMPANY**, c/o Emil Alecusan 800 Wabash Ave. S. Brewster, OH 44613 | ) **JURY DEMAND ENDORSED HEREON** ) ) ) ) ) |
| Defendant. | ) |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

### INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of [her]self or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiff brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act on behalf of all hourly workers currently or previously employed by Defendant in Ohio within the two years preceding the filing of this Action.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. During relevant times, Plaintiff has been an adult individual residing in this District and Division.

8. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

9. Defendant is a for-profit Ohio corporation that is registered to conduct business in Ohio. Upon information and belief, Defendant's principal place of business is located at 800 Wabash Avenue South, Brewster, Ohio, 44613.

10. At all relevant times, Defendant conducted business in Brewster, Ohio.

11. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

12. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

13. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

14. Plaintiff's written Consent to Join form is filed as **Exhibit A** attached hereto.

**FACTUAL ALLEGATIONS**

15. Defendant is an Ohio corporation that is located in Brewster, Ohio and engages in the processing of milk, cheese, and whey and the production and packaging of swiss cheese.

16. According to Defendant's website, "We produce more than 100 million pounds of award winning, all natural Swiss cheese each year. We love what we do and – of course – love to #makeitswiss. Yeah, we know, we're cheesy. But we're proud of our products, our people and our roots here in small-town Brewster, Ohio. Chances are, if you are buying Swiss cheese in the United States, it most likely came from Brewster Cheese. We produce for all of the major national brands and major retailers."[1]

17. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and are subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").[2]

18. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

19. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials ***shall conform to hygienic practices while on duty*** to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

      a. Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

      b. Maintaining adequate personal cleanliness.

---

[1] http://www.brewstercheese.com/about-us (last viewed 2/13/2020).
[2] *See also* www.accessdata.fda.gov/scripts/inspsearch > "Brewster Cheese Company" (last viewed 2/13/2020).

    c. Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate handwashing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

    d. Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

    e. Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

    f. Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

    g. Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

    h. Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

    i. Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

20. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. § 110.10(d).

21. The FDCA prohibits the adulteration of food and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

22. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

23. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

24. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

25. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

26. Thus, it would be impossible for Plaintiff and those similarly situated, who were engaged in the processing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment required by law.

27. Indeed, if Plaintiff and the putative class members did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's food products.

28. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting their employees to disregard federal and/or state food-safety laws.

29. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to follow certain anti-contamination protocol, including wearing sanitary and other protective equipment, handwashing, and hand sanitizing.

30. As a result, compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

31. Compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

32. Compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is a component of the work they are hired to do.

33. Unless Defendant's employees involved in the processing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

34. Therefore, donning and doffing of sanitary clothing and other protective equipment, handwashing, hand sanitizing, and other anti-contamination steps are integral and indispensable to the work performed by Defendant's employees who are involved in the processing, packaging, and handling of food.

35. The required anti-contamination steps, including donning of sanitary clothing and other protective equipment by Defendant's employees involved in the processing, packaging, and handling of food is those employees' first principal activity of the day; additionally, doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the processing, packaging, and handling of food is those employees' last principal activity of the day.

36. Plaintiff and others similarly situated were non-exempt employees under the FLSA and were paid an hourly wage, and performed non-exempt work in Defendant's processing and packaging of food for human consumption.

37. Because Plaintiff and other similarly situated employees are involved in the processing, packaging, or handling of food, to comply with the GMPs they engage in mandatory anti-contamination job duties and must wear sanitary clothing and other protective equipment, including but not limited to sanitary gear, uniforms, pants, shirts, aprons, hair nets, sleeves, and gloves.

38. Plaintiff and other similarly situated employees who are involved in the processing, packaging, or handling of food cannot complete their work unless they perform anti-contamination job duties and wear the sanitary clothing and other protective equipment required by law.

39. Compliance with the GMPs by Plaintiff and other similarly situated employees is integral and indispensable to the work they are hired to do.

40. Compliance with the GMPs by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

41. Compliance with the GMPs by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

42. The donning and doffing of sanitary clothing and other protective equipment and other mandatory anti-contamination steps, including donning and doffing sanitary gear and other protective equipment, are required by law and are integral and indispensable to the work performed by Plaintiff and other similarly situated employees.

43. The donning and doffing of sanitary gear and other protective equipment and mandatory anti-contamination steps are required by law and performed by Plaintiff and other similarly situated employees, both of which are components of the work they are hired to do.

44. Following donning of personal protective equipment and sanitary gear, Plaintiff and other similarly situated employees were required to lint roll. Then, Plaintiff and other similarly

situated employees were required to wash their hands at designated hand-washing stations before they began work each day and at the beginning and end of each breaks.

45. The donning and doffing of sanitary clothing and other protective equipment and mandatory anti-contamination steps are required by law and performed by Plaintiff and other similarly situated employees and are intrinsic elements of their activities that cannot be dispensed with if Plaintiff and other similarly situated employees are to perform their principal activities.

46. Plaintiff and other similarly situated employees are/were required to begin performing this anti-contamination work at Defendant's business and before clocking in for which they are/were not paid.

47. The anti-contamination duties that Plaintiff and others similarly situated are required to perform include: donning/doffing work uniforms, tying hair up in a hairnet, wearing work boots, covering work boots, foot bath, wearing an apron, lint rolling, washing their hands at a designated hand-washing station, drying their hands, sanitizing their hands after washing, and putting on gloves.

48. All of these anti-contamination duties are performed by Plaintiff and others similarly situated before they are/were permitted to clock in or were performed after they clocked in but before they began receiving payment. All of the anti-contamination duties performed by Plaintiff and others similarly situated are necessary and indispensable to the work they were hired to perform, namely processing and packaging food for human consumption.

49. Plaintiff and others similarly situated are/were required by Defendant to perform these activities at work and were not permitted to perform these activities at home because if they wore their work uniforms or personal protective and sanitary gear in from the outside, they risked bringing contaminants into Defendant's facilities where food was processed and packaged for human consumption.

50. During orientation, Plaintiff and others similarly situated are trained about the importance of cleanliness and that avoiding contamination is critical to their jobs because they work with food that is meant for human consumption.

51. The time Plaintiff and other similarly situated employees spent disinfecting their shoes, donning and doffing personal protective equipment and sanitary clothing, washing their hands at the designated hand-washing stations, drying their hands, sanitizing their hands, and in associated travel was integral and indispensable to their principal activities, required by Defendant and the FDA, and performed for Defendant's benefit in that it helped keep Defendant's facility safe and sanitary and promote a more safe and efficient processing and packaging of food for human consumption.

52. Disinfecting shoes, washing hands, sanitizing hands, and wearing sanitary clothing are essential to protecting the public health when performing the tasks assigned to Plaintiff and the putative class members.

53. Plaintiff and other similarly situated employees, as full-time employees, regularly worked over 40 hours in a workweek, including engaging in these mandatory anti-contamination steps.

54. Plaintiff and other similarly situated employees were not paid for all of the time performing these anti-contamination steps.

55. Many of the anti-contamination steps were repeated when Plaintiff and others similarly situated returned from breaks.

56. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, and Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked over forty (40) each workweek.

57. The amount of time Plaintiff and other similarly situated employees spent on their unpaid work was approximately ten (10) to fifteen (15) minutes or more each day. This resulted in approximately fifty (50) minutes to one (1) hour and fifteen (15) minutes or more of unpaid overtime per class member per week.

58. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA by not paying Plaintiff and those similarly situated for work performed that is necessary and indispensable to their job duties of processing and packaging food for human consumption.

59. Upon information and belief, Defendant failed to make, keep, and preserve records of the required and unpaid work performed by Plaintiff and other similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff brings this action on her own behalf pursuant to 29 U.S.C. § 216(b) and on behalf of all other similarly situated persons who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

61. The class which Plaintiff seeks to represent and to whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> **All former and current hourly production employees who were required to: (1) don and doff personal protective equipment and sanitary gear or otherwise perform mandatory anti-contamination steps; and (2) who worked 40 or more hours in any workweek within three (3) years preceding the date of filing of this Complaint to the present.**

62. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly

situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

63. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## OHIO CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other current or former persons employed by Defendant within the last two years ("Ohio Class") defined as:

> **All former and current hourly Ohio production employees who were required to: (1) don and doff personal protective equipment and sanitary gear or otherwise perform mandatory anti-contamination steps; and (2) who worked 40 or more hours in any workweek within two (2) years preceding the date of filing of this Complaint to the present**.

65. The class is so numerous that joinder of all class members is impracticable.

66. There are questions of law or fact common to the Ohio Class, including: whether Defendant failed to pay its employees for the anti-contamination steps required for them to perform their duties of processing and packing food for human consumption, as well as the associated travel and whether that resulted in the underpayment of overtime.

67. Plaintiff will adequately protect the interests of the Ohio Class. Her interests are not antagonistic to but, rather, are in unison with the interests of the Ohio Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Ohio Class in this case.

68. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Ohio Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

69. Notably, the Ohio Senate has not acted to incorporate the federal Portal-to-Portal Act into Ohio's overtime law, which includes the pre-shift anti-contamination steps described herein.[3]

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Ohio Class members to pursue their claims individually would entail a host of separate suits with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Ohio Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

71. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

72. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one-and-one-half times their regular rate of pay for all hours worked over forty (40) each workweek violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

---

[3] *See* Ohio 133 General Assembly Regular Session 2019-2020 S.B. No 243.

73. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 516.2(a)(7).

74. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

75. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been harmed in that they have not received wages due to them pursuant to the FLSA, and because such wages remain unpaid, damages continue.

## COUNT TWO
### (Ohio Overtime Violations)

76. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

77. Defendant's practice of not paying Plaintiff and other similarly situated employees for the anti-contamination steps, including donning or doffing time, as well as time spent washing their hands at designated hand-washing stations and associated travel each day resulted in the underpayment of overtime in violation of Ohio law.

78. As a result of Defendant's practices, Plaintiff and other similarly situated Ohio Class employees have been harmed in that they have not received wages due to them pursuant to Ohio's wage and hour laws, and because such wages remain unpaid, damages continue.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and all similarly situated persons, collectively pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt in;

B.      Enter judgment against Defendant, and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S. C. § 216(b), and the Ohio Class;

C.      Award Plaintiff and the putative class actual damages for unpaid wages;

D.      Award Plaintiff and the putative class liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the putative class;

E.      Award Plaintiff and the putative class pre-judgment and post-judgment interest at the statutory rate;

F.      Award Plaintiff and the putative class attorneys' fees, costs, and disbursements; and

G.      Award Plaintiff and the putative class further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorney for Plaintiff and those similarly situated*

## JURY DEMAND

Plaintiff demands a trial by jury of twelve (12) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman

*Counsel for Plaintiff*