# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KATHY COOK, on behalf of herself and others similarly situated, | ) ) ) ) | CASE NO. 5:20-cv-0445 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | MEMORANDUM OPINION AND |
| BREWSTER CHEESE COMPANY, | ) ) ) | ORDER |
| DEFENDANT. | ) ) | |

Before the Court is the pre-discovery motion of plaintiff Kathy Cook ("Cook") for conditional certification and court-authorized notice. (Doc. No. 10 ["Mot."].) Defendant Brewster Cheese Company ("Brewster") filed a response in opposition (Doc. No. 20 ["Opp'n"]), and Cook filed a reply. (Doc. No. 23 ["Reply"].) For the reasons set forth below, Cook's motion is granted in part.

## I. BACKGROUND

On February 27, 2020, Cook filed a complaint against Brewster alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 411.03. (*See generally* Doc. No. 1 (Complaint).) Cook subsequently amended her complaint to include federal and state law discrimination claims. (Doc. No. 24-1 (First Amended Complaint ["FAC"]).) Cook seeks to bring this as a collective action for the FLSA claim and as a Rule 23 (Fed. R. Civ. P. 23) class action for the OMFWSA claim. (*See id.* ¶¶ 2–3.)

Brewster is an Ohio corporation that "engages in the processing of milk, cheese, and whey and the production and packaging of swiss cheese." (FAC ¶¶ 9, 15.) While its principal place of business is located in Brewster, Ohio, Brewster also has facilities in Stockton, Illinois, and Rupert, Idaho. (Compl. ¶ 9; Mot. at 45, citing http://www.brewstercheese.com/production-plants).

According to the amended complaint, to comply with federal regulations relating to food safety and sanitation, all Brewster employees who are involved in the processing, packaging, or handling of food are required to wear sanitary and protective clothing, such as dedicated work clothes, hair nets, sleeves, work boots, aprons, beard covers, and safety glasses. (FAC ¶¶ 17–19, 37.) These employees are also required to engage in other sanitary measures, such as covering work boots, cleaning boots in a foot bath, lint rolling clothes, washing hands at a designated hand-washing station, and drying and sanitizing hands. (*Id.* ¶¶ 19, 29, 34, 47.) Cook alleges that Brewster does not compensate its employees for donning and doffing of sanitary and/or protective clothing, for washing and drying their hands, or for the associated travel and waiting times. (*Id.* ¶¶ 54, 56.)

Based on these allegations, Cook's amended complaint identifies the following FLSA collective that she seeks to give notice and to represent:

> All former and current hourly production employees who were required to: (1) don and doff personal protective equipment and sanitary gear or otherwise perform mandatory anti-contamination steps; and (2) who worked 40 or more hours in any workweek within three (3) years preceding the date of filing of this Complaint to the present.

(*Id.* ¶ 75.)[1]

---

[1] With respect to Brewster's OMFWSA claim, Brewster seeks to represent a similar class of Ohio workers who were employed by Brewster within two (2) years of the filing of the present lawsuit. (*Id.* ¶ 78 ["Ohio Class"].)

2

## II. CONDITIONAL CERTIFICATION

### A.    Standard

A collective action for unpaid overtime under the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b); *see Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).[2] Further, FLSA actions are "forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" 29 U.S.C. § 255(a).

The Sixth Circuit has "'implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action.'" *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-cv-0593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012)). "The first [step] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks and citations omitted).

This case is only at the first step, where a plaintiff bears the burden of showing that the employees in the collective are "similarly situated." *Id*. To satisfy this burden at the initial notice stage, the plaintiff must only "make a modest factual showing" that she is similarly situated to

---

[2] A collective action brought under § 216(b) is distinguishable from a Rule 23 class action in that plaintiffs in a collective action must "opt-in" rather than "opt-out" of the lawsuit. The "opt-in" nature "heightens the need for employees to 'receiv[e] accurate and timely notice concerning the pendency of the collective action.'" *Castillo v. Morales, Inc*., 302 F.R.D. 480, 483 (S.D. Ohio 2014) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). The statute, therefore, vests in the district court the discretion to facilitate notice to potential plaintiffs "in appropriate cases[.]" *Hoffmann-La Roche*, 493 U.S. at 169.

the other employees she is seeking to notify. *Id.* 547 (quotation marks and citation omitted). The standard at the notice stage is "fairly lenient … and typically results in 'conditional certification' of a representative class[.]" *Id.* (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). During this preliminary stage, a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011) (collecting cases).[3]

As regards the initial inquiry, the Sixth Circuit has observed that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, --U.S.--, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). Plaintiffs may meet the similarly situated requirement if they can demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*; *see Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865–66, 868 (S.D. Ohio 2005) (at this stage, a plaintiff must establish a "colorable basis" for his allegation that others are similarly situated and should therefore be

---

[3] During the second step, courts have discretion to make a thorough finding regarding the "similarly situated" requirement, based upon a more fully developed record. *See Comer*, 454 F.3d at 547. At this time, a court is more inclined to consider "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations . . . .'" *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006) (quoting *Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). Should the district court determine that, after this more rigorous and fact-intensive analysis, the claimants are similarly situated, "the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07-cv-0077, 2007 WL 1341779, at *4 (N.D. Ohio Apr. 30, 2007).

notified of the action); *see also Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (at the initial notice stage, "the named plaintiff need only show that [his] position [is] similar, not identical, to the positions held by the putative class members") (alterations in original) (quotation marks and citation omitted).

      B.    **Discussion**

Appended to the present motion are the declarations of Cook and Jimie Gardiner ("Gardiner"). Cook avers that she worked at the Brewster, Ohio facility "within the last year" as a "heavy laborer" on the production floor, and her job duties included "working directly with or handling food products or ingredients[.]" (Doc. No. 10-1 (Declaration of Kathy Cook ["Cook Decl."]) ¶¶ 3–4.) As a Brewster employee, she received training and instruction on "Brewster's policies and procedures for avoiding contamination of food for sale to the public, which included changing out of street clothes and into dedicated work clothes which were kept on premises; wearing sanitary clothing, such as a hairnet, [beard net] (for employees with beards), sleeves, and aprons; and washing and sanitizing shoes and hands." (*Id*. ¶ 10.) According to Cook, employees who worked directly with or handled food products on the production floor were required to follow Brewster's food safety and sanitation policies. (*Id*. ¶ 8; *see also id*. ¶ 11.) Cook was required to arrive at the facility at least 15 minutes prior to the start of her shift so that she could implement these safety and sanitation procedures. (*Id*. ¶ 12; *see id*. ¶¶ 13–15.) Notwithstanding this directive, Cook was not permitted to clock in until 5 minutes before her shift began, and she insists that she and others were told "[they] had to clock in 5 minutes before [their] shift began in order to be ready and at [their] workstations by the scheduled start of [their] shift." (*Id*. ¶ 16.)

Cook claims that she "observed many other employees at Brewster's facility in Brewster,

Ohio, who, like [Cook], were also required to change out of their street clothes and into work clothes in the locker room; clock in 5 minutes before their shift began; put on an apron, sleeves, and hairnet; go to the foot bath to clean their boots; and wash and sanitize their hands prior to going to the production line or other area of the production facility. All employees were required to be on the production floor ready for work at the scheduled start of their shifts." (*Id*. ¶ 23.) "Most if not all, of these employees were employees who, like [Cook], were also directly involved in the handling, preparation, and packaging of food for sale to the public." (*Id*. ¶ 24.)

Gardiner was employed by Brewster at its facility in Brewster, Ohio from February 2018 to February 2019. (Doc. No. 10-2 (Declaration of Jimie Gardiner ["Gardiner Decl."]) ¶ 3.) Like Cook, he was employed as a heavy laborer and his declaration substantially tracks Cook's. He also insists that all employees on the production floor were "working directly with or handling food products" and, as a result, were required to adhere to Brewster's sanitation and safety policies. (*Id*. ¶¶ 7–8, 11.) He also observed other employees at the Brewster, Ohio facility performing the same pre-shift safety and sanitation procedures. (*Id*. ¶ 23.)

Cook subsequently supplemented her motion with two additional declarations. Joe Popick declared that he was employed by Brewster at the Brewster, Ohio facility "from approximately 2016 to January of 2019." (Doc. No. 11-1 (Declaration of Joe Popick ["Popick Decl."]) ¶ 3.) During his time with Brewster, he "worked as a bagging line operator on the production floor in the whey plant. [His] job duties included working directly with or handling food products or ingredients that Brewster made into food products that would be sold to the

public."[4] (*Id.* ¶ 4.) In addition to bagging line operators and heavy laborers, he avers that there were other employees on the production floor such as machine operators. (*Id.* ¶ 6.) Popick reports that he, too, was required to "follow Brewster's safety and sanitation policies[.]" (*Id.* ¶ 11.) Unlike Cook and Gardiner, Popick was not permitted to clock into work "until the exact time [his] shift began[.]" (*Id.* ¶ 17.)

Hutch Hendrix ("Hendrix") worked at Brewster's Ohio facility as a "heavy laborer" from approximately June 2018 to December 2019. (Doc. No. 16-1 (Declaration of Hutch Hendrix ["Hendrix Decl."]) ¶¶ 3–4.) Hendrix's declaration reads substantially similar to the declarations offered by Cook and Gardiner, including the discussion of the required pre-shift safety protocols and procedures. In much the same fashion that Cook and Gardiner described their duties as a "heavy laborer," Hendrix explained that he worked on the production line "where [he] would strip and clean mold off the blocks of cheese and break down the boxes that packaged the cheese among other job duties, such as trim pull, transition, sealer, and trim barrels, and wrap." (*Compare id.* ¶ 5 with Cook Decl. ¶ 5; Gardiner Decl. ¶ 5.)

In light of these declarations, Brewster is willing to stipulate to conditional certification of a collective that is more limited than that proposed by Cook. (Opp'n at 125[5].) Specifically, Brewster indicates that it will stipulate to conditional certification "only for the purported members of the collective action that are/were hourly production employees that work/worked in Brewster Cheese's Brewster, Ohio cutting room or whey plant."[6] (*Id.*; *see id.* at 131.) According

---

[4] For example, Popick notes that he "often worked on the bagging machine where [he] would put bags onto the machine, fill them up to 55 pounds, remove the bag from the machine and seal it." (*Id.* ¶ 5.)

[5] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

[6] Brewster reserves the right to move for decertification at the conclusion of discovery. (*Id.* at 131.)

7

to Brewster, "[s]uch facilities are the only Brewster Cheese facilities for which it can plausibly be found that [Cook] submitted any evidence that Brewster Cheese employees were similarly situated with respect to [Cook's] allegations of an FLSA-violating policy (which, on the merits, Brewster Cheese vehemently denies)." (*Id*. at 125.)

### 1. Brewster, Ohio Facility

First, Brewster opposes inclusion of those workers in the Brewster, Ohio cheese plant. Brewster offers the declaration of Jim Barnard, Director of Operators for Brewster, who avers that the Brewster, Ohio complex is comprised of "three distinct areas in which hourly food production employees work: the cheese plant, the whey plant, and the cutting room." (Doc. No. 20-1 (Declaration of Jim Barnard ["Barnard Decl."]) ¶ 3.) Brewster insists that Cook has offered no evidence as to any purportedly similarly situated employees in the cheese plant in Ohio, noting that the declarations offered in support of the present motion are limited to individuals who were employed in the whey plant (Popick) and the cutting room (Cook, Gardiner, and Hendrix). (Opp'n at 131.) Because each area in the Brewster, Ohio plant "has its own locker room, time clocks, and procedures for sanitizing and donning and doffing at the start of each shift[,]" Brewster contends that Cook cannot meet her burden of showing similarity with the cheese plant employees. (*See* Barnard Decl. ¶ 3.)

But all of the declarants offered by Cook reported personally observing "many other employees" at the Brewster's facility employing the same pre-shift food safety and sanitation protocols. (*See* Cook Decl. ¶ 23; Gardiner Decl. ¶ 23; Popick Decl. ¶ 21; Hendrix Decl. ¶ 23.) Though it is unclear at this time who exactly the declarants witnessed, the observations do not appear to be limited to any particular department at the Brewster, Ohio facility. Based on this

information, the Court finds that plaintiff has made a modest (albeit *very* modest) factual showing to support certification of a conditional collective of food processing/handling employees at the Brewster, Ohio facility. While Brewster insists that Cook's showing is frustrated by its own showing that each department has different locker rooms, time clocks, and procedures, these arguments, at best, raise factual disputes that are best left for consideration at the decertification stage after discovery has taken place.[7] *See Waggoner*, 110 F. Supp. 3d at 769 (collecting cases reserving assessment of disparate factual and employment settings of individual collective members to the second stage of the certification process).

### 2. *Illinois and Idaho Facilities*

The Court agrees with Brewster, however, that Cook has failed to make *any* showing that she is similarly situated to Brewster employees at the Illinois and Idaho facilities. As the Court has already noted, the standard for conditional certification is lax and requires a plaintiff to simply submit evidence establishing at least a "colorable basis" for certification. *Waggoner*, 110 F. Supp. 3d at 765 (quoting *Harrison*, 411 F. Supp. 2d at 865–66). "Even so, '[a] minimal burden should not be confused with a nonexistent burden.'" *Peer v. Grayco Mgmt. LLC*, No. 3:16-cv-1578, 2017 WL 2403269, at *3 (M.D. Tenn. June 2, 2017) (quoting *Goodrich v. Covelli Family Ltd. P'ship*, No. 8:11-cv-1715, 2012 WL 1081473, at *3 (M.D. Fla. Mar. 30, 2012) (further citation omitted)). "Although a plaintiff need only make a 'modest' showing that putative class

---

[7] Indeed, Brewster fails to explain how the safety and sanitation protocols differed from department to department at the Brewster, Ohio facility. It also fails to explain why the use of different locker rooms and time clocks defeats any argument that all the employees in Brewster, Ohio "suffer from a single, FLSA-violating policy[,]"; namely, allegedly not being paid for employing safety protocols like donning and doffing safety gear. *See O'Brien*, 575 F.3d at 585 (noting that plaintiffs can be similarly situated where they articulate "common means by which they were allegedly cheated[, like] forcing employees to work off the clock"). That is not to say that these factual distinctions may not ultimately prove legally consequential. After discovery has taken place, the Court will examine more closely the question of whether particular members of the collective are, in fact, "similarly situated." *Comer*, 454 F.3d at 546–47.

members are similarly situated, the standard is not toothless and requires a factual showing justifying the conditional approval of a nationwide class." *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-0060, 2020 WL 3496150, at *3 (S.D. Ohio June 29, 2020).

The facts set forth in Cook's declarations are limited to the requirements and/or observations of employees on the production floor at the Brewster, Ohio facility. There are no affidavits from employees at the Illinois and Idaho facilities, and there is no way the Court can even make an initial determination as to whether they have purportedly suffered from the same or similar FLSA violation alleged by Cook's declarants. Under these circumstances, it is appropriate, at this time, to limit conditional certification to employees at the Brewster, Ohio facility. *See, e.g., id.* at *3–4 (limiting conditional certification to single store where plaintiff worked, noting that plaintiff had failed to present facts showing an across-the-board policy that applied to employees at all of defendant's pizzerias); *Conklin v. I-800 Flowers.com, Inc.*, No. 2:16-cv-0675, 2017 WL 3437564, at *5 (S.D. Ohio Aug. 10, 2017) (holding that plaintiffs failed to present sufficient evidence to justify the conditional certification of a nationwide class because the three declarations supporting plaintiffs' motion only contained information about employees at one of defendant's locations); *Peer*, 2017 WL 2403269, at *4 (denying company-wide conditional certification where declarations were based on experiences at one of defendant's restaurants and collecting similar cases).

In her reply, Cook argues that there is no requirement that a plaintiff produce declarations "from every single worksite in order to obtain conditional certification at each worksite." (Reply at 152.) True, "[a] court can conditionally certify a collective action under the FLSA on the strength of a single affidavit or declaration if that document sets forth sufficient facts from which

the court may reasonably infer the existence of other employees who were subject to the same wage and work hours policy as plaintiff." *Pop v. Permco, Inc.*, No. 5:19-cv-0659, 2019 WL 4154480, at *3 (N.D. Ohio Sept. 3, 2019) (slip copy) (quoting *Rembert v. A Plus Home Health Care Agency, LLC*, No. 2:17-cv-0287, 2018 WL 2015844, at *2 (S.D. Ohio May 1, 2018)). But declarations that meet this standard typically contain first-hand observations of employees at other locations, or other relevant evidence, showing a unified policy that applied to all employees. *See, e.g., Adams v. Wenco Ashland, Inc*., No. 1:19-cv-1544, 2020 WL 2615514, at *6 (N.D. Ohio May 22, 2020) (finding defendant had a common policy and operation at all its locations based on plaintiff's declaration that "provided personal observations of [plaintiff's] own experience at three locations, his observations of at least one other [employee] who had similar work experiences as [p]laintiff, his observations of company policy at play, and statements about [his] position generally from his District Manager"); *Honaker v. Wright Bros. Pizza, Inc.*, No. 2:18-cv-1528, 2020 WL 134137, at *2 (S.D. Ohio Jan. 13, 2020) (conditional certification granted based on declarations of husband and wife stating they "knew other drivers were subject to the same rules with respect to wages delivery reimbursements because they worked in multiple locations under the same terms, spoke to other delivery drivers about how they were paid, and saw them receive their reimbursements"); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-0516, 2017 WL 3500411, at *4 (S.D. Ohio Aug. 15, 2017) (conditional certification granted to class of delivery drivers in Greater Dayton, Ohio area where the plaintiff's declaration "set forth specific facts regarding manager training, delivery drivers working at multiple Cousin Vinny's locations, and uniform promotional, management,

employment and payroll practices across all Cousin Vinny's locations").[8]

Cook points to the fact that an employee from Brewster's Illinois facility, Angela Anderson, has opted-in to the collective. (Reply at 149, 151; *see* Doc. No. 4-1 (Consent to Join of Angela Anderson) at 33.) Cook speculates, without support, that "Angela Anderson has joined this case because she was not fully compensated for pre-shift work she performed as a food production worker at [d]efendant's Stockton, Illinois facility. [Cook] has exceeded her initial burden." (*Id*. at 151.) The identification of other potential plaintiffs is one factor that can guide a court's overall consideration of conditional certification. *See Waggoner*, 110 F. Supp. 3d at 765 (identifying the following relevant factors: "(1) whether potential plaintiffs were identified; (2) whether affidavits of potential plaintiffs were submitted; and, (3) whether there is evidence of a 'widespread' discriminatory plan affecting those plaintiffs, which was maintained by defendants") (citing, among authority, *Castillo*, 302 F.R.D. at 486). Without some evidence beyond Cook's speculation as to why Angela Anderson opted-in, however, the existence of an opt-in plaintiff from another facility is insufficient to establish the existence of a company-wide policy of FLSA violations.[9] *See generally Flexter v. Action Temp. Servs., Inc*., No. 2:15-cv-0754, 2016 WL 7852351, at *5 (S.D. Ohio Mar. 25, 2016) (speculative statements that plaintiff and

---

[8] Cook cites this Court's decision in *Waggoner*, wherein the Court conditionally certified a nationwide collective of all individuals who had worked as co-managers at any of defendant's banks during the relevant time period. (Reply at 152, citing *Waggoner, supra*). Cook's reliance on *Waggoner* is misplaced, as the Court had before it there declarations from employees at multiple branches attesting to similar treatment, plaintiff's observations of co-managers from other branches, and multiple job postings for co-managers from different branches showing a purported company-wide plan of misclassifying co-managers for purposes of exclusion from overtime compensation. *Waggoner*, 110 F. Supp. 3d at 763, 767–68.

[9] Such evidence could be relied upon to show interest in a collective action, to the extent that interest is even required to justify conditional certification. *See Bradford v. Logan's Roadhouse, Inc*., 137 F. Supp. 3d 1064, 1077–79 (M.D. Tenn. 2015) (questioning whether "interest" is a necessary component of a plaintiff's burden of proof on conditional certification and reviewing cases). But Cook fails to offer any authority for her position that a consent form, alone, can be used to demonstrate a unifying FLSA violation.

others in the collective suffered from uniform rules that denied them overtime compensation were insufficient to support conditional certification).

Because Cook has failed to show that employees other than those working at the Brewster, Ohio facility are similarly situated, the Court concludes that conditional certification of a collective limited to past and present production floor employees at the Brewster, Ohio facility is warranted.

### III. OPT-IN NOTICE

Cook requests that the Court approve her proposed opt-in notice and procedure for disseminating the notice to the putative FLSA collective members and has attached a proposed notice and consent to join form to her motion for conditional certification. (Doc. No. 10-3 ["Notice"]; Doc. No. 10-4 ["Consent Form"].) Brewster objects to several aspects of the proposed Notice and notice procedure.

Courts have authority to supervise notice to putative class members. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 870 (S.D. Ohio 2011) (citing *Hoffman-La Roche Inc.*, 493 U.S. at 172). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172. Accurate and timely notice concerning the pendency of a collective action promotes judicial economy because it discourages class members from filing numerous identical suits and allows them to pursue their claims in one case where the same issues of law and fact are already being addressed. *Id*. at 170.

### A.     **Content of the Notice**

Brewster takes issue with the fact that the purported class identified on the face of the Notice does not match the class Cook seeks to conditionally certify in her motion (Opp'n at 135.)

Cook agrees that the class noticed should match the class certified. (Reply at 154.) The Court directs the Notice to be modified to conform to the class conditionally certified, as set forth in this memorandum opinion and order.

Brewster requests that the Court require the Notice to be further modified as follows: (1) include language indicating that Brewster maintains that it complied with the FLSA in good faith; and (2) add language advising that the opt-in plaintiffs could be liable for payment of Brewster's costs associated with the lawsuit if Brewster prevails. (Opp'n at 135–36.) Cook does not oppose language advising that Brewster not only denies the allegations and any FLSA violations, but also that it maintains that it has compiled with the FLSA in good faith. (Reply at 155.) The Court directs the Notice to be further modified to include such language.

Cook objects, however, to any language advising putative class members of their potential liability, suggesting that such language is designed to chill participation in the case. (*Id*.) "Courts have held that potential plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendant's costs of litigation." *Snide v. Disc. Drug Mart, Inc*., No. 1:11-cv-0244, 2011 WL 5434016, at *6 (N.D. Ohio Oct. 7, 2011) (collecting cases), *report and recommendation adopted by* 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011); *see Heaps v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011) (issues of financial responsibility play into the decision to join a collective FLSA action). Accordingly, the Court will require the Notice to be modified to include such language.

### B.      Manner of Dissemination

Cook proposes sending the Notice to the putative class members by email and first class

mail, and she requests that Brewster be required to supply Cook with a variety of information, including email addresses for the putative class members. (Mot. at 52.) Brewster objects to email notification mainly because it does not maintain email addresses for its hourly production employees. (Opp'n at 137, citing Barnard Decl. ¶ 8.) Because Brewster does not have access to such information (something that Cook does not dispute), the Court will not require Brewster to supply it to Cook, and, further, it will not permit the Notice and Consent Form to be disseminated electronically.

### C.     Opt-In Period

Finally, the parties disagree on the proposed notice opt-in period. Cook advocates for a 90-day notice period, while Brewster counters with a proposed 45-day period. Because the Court has ruled that the collective shall be limited to employees and former employees in Ohio, a longer notice period is unnecessary. *See, e.g., Bradford*, 2020 WL 3496150, at *7 (shortening notice period where nationwide certification not permitted) But given that the Court is not permitting notification by electronic means, and further recognizing that the COVID-19 health crisis has impacted U.S. Mail service and may make it more difficult for Cook to locate former employees, the Court shall permit a 60-day notice period. *See, e.g., Headspeth v. TPUSA, Inc*., No. 2:19-cv-2062, 2020 WL 4577491, at *1 (S.D. Ohio July 23, 2020) (permitting longer opt-in period given expected delays due to COVID-19).

### IV. CONCLUSION

For the reasons set forth herein, Cook's motion for conditional certification and court-authorized notice (Doc. No. 10) is GRANTED IN PART. The Court conditionally certifies the following collective under 29 U.S.C. § 216(b):

> All former and current hourly production employees at defendant's Brewster, Ohio facility who were required to: (1) don and doff personal protective equipment and sanitary gear or otherwise perform mandatory anti-contamination steps; and (2) who worked 40 or more hours in any workweek within three (3) years preceding the date of filing of the motion for conditional certification.

Brewster is directed to provide to Cook's counsel, within fourteen (14) days of this ruling, a roster of persons who are encompassed by this collective, including their full names, dates of employment, and last known home addresses.

Further, with the benefit of this ruling, the parties shall confer and, within twenty-one (21) days of this ruling, shall jointly submit for the Court's approval their proposed revised Notice to potential plaintiffs, along with the proposed revised Consent Form.

Within fourteen (14) days after the Court approves the Notice and Consent Form, counsel shall jointly submit proposed dates and deadlines for the Case Management Plan, including recommendations for all the following: track assignment; deadline for adding parties or amending pleadings; method for ESI; fact discovery cutoff; deadlines for identifying burden of proof experts and providing reports, for identifying rebuttal experts and providing reports, and for the expert discovery cutoff; deadlines for filing dispositive motions, for filing responses, and for filing replies; and suggested dates for status conference(s), final pretrial conference, and trial (two-week standby).

**IT IS SO ORDERED**.

Dated: October 5, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**